808 July 29, 2026 No. 714

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARK ARRON CASTIMORE,
*Defendant-Appellant.*

Marion County Circuit Court
22CR48176; A183783

Daniel J. Wren, Judge.

Argued and submitted November 25, 2025.

Anna R. Johnson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Julia Taylor, Assistant Attorney General, argued the cause for respondent. On the brief were Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General and Robert C. Hansler, Assistant Attorney General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals from a judgment convicting him of felon in possession of a firearm, ORS 166.270(1). Defendant's conviction was the result of a conditional guilty plea, which reserved the right to challenge the trial court's denial of his motion to suppress a firearm that was seized for the duration of a traffic stop. On appeal, defendant assigns error to the trial court's ruling on his motion to suppress, arguing that the temporary seizure of a loaded firearm from the center console of his car was not justified by the officer-safety exception to the warrant requirement in Article I, section 9, of the Oregon Constitution. The officer removed the loaded firearm after defendant announced that it was in the same center console as documents requested by the officer, which meant that the weapon would necessarily be handled during the stop. We narrowly conclude that, under the circumstances specific to this case, the officer's safety concerns particularized to the loaded firearm reasonably justified his temporary seizure of the weapon for the duration of the traffic investigation. Therefore, we affirm.

## I.  FACTS

"We review the denial of a motion to suppress for legal error and are bound by the trial court's explicit and implicit factual findings if evidence in the record supports them." *State v. Bailey*, 307 Or App 782, 783, 479 P3d 304 (2020).

With that standard in mind, we state the undisputed and underlying facts, which are drawn from the officer's bodycam footage of the stop and the testimony offered at the motion to suppress hearing. An officer, who had a civilian ride-along in his patrol car, stopped defendant for driving without a seatbelt. A passenger sat in the front seat of the vehicle. The officer asked defendant for his driver's license and the vehicle registration. After handing the officer his license, defendant proactively informed the officer that the passenger's 9mm firearm was located in the center console, which defendant stated he would "have to open" to obtain the registration. The passenger indicated that she would open the console because the firearm was hers. The

officer responded, "because there's a firearm in there, I'm just going to seize it for the duration of the stop and \*\*\* give it right back." The passenger replied that that was "fine." The officer opened the passenger door, reached into the car, opened the console, and removed the gun. During that process, the passenger informed the officer that the firearm was loaded. Defendant then retrieved the requested documentation from the console and handed it to the officer. The officer returned to his patrol car and processed the documents. At the end of the traffic stop, and about 10 minutes after the officer took the firearm, he returned it to the passenger after first unloading it. Throughout the encounter, defendant and the passenger were cooperative, and the atmosphere was relaxed and conversational.

The officer later discovered that defendant was a convicted felon, which led to defendant being charged for felon in possession of a firearm. Defendant moved to suppress evidence of the firearm, including officer testimony and the bodycam video, on the basis that the officer's temporary seizure of the firearm ran afoul of Article I, section 9.

The trial court held a hearing on the motion to suppress. The officer and the passenger testified as to the above events. The officer also provided testimony on his safety concerns that motivated his seizure of the firearm. For example, he testified that knowing that there is a firearm within reach of a vehicle driver or passenger puts him on "high alert," because he "know[s] that is a deadly weapon that can cause me serious physical injury or death as well as potentially others," and seizing the firearm therefore protects his "safety as well as their safety." When pressed on cross-examination, the officer agreed that "nothing [defendant] did" caused him to feel unsafe, and that the "sole reason" for his safety concerns was the presence of the firearm "[w]here people would have to be digging for their documents."

Noting that "the officer has the ability to make sure that they're safe when they make a stop," the court denied defendant's motion to suppress based on the officer-safety exception to the warrant requirement. In an oral ruling, the trial court reasoned that, "no matter how cordial and how nice" defendant and the passenger were during the

encounter, the presence of a known firearm in the center console gave rise to reasonable officer-safety concerns and that therefore "the officer had the ability to seize [the firearm] for the duration [of the stop] based upon * * * the totality of the circumstances[.]"

Defendant entered a conditional guilty plea, reserving the right to appeal the court's denial of his motion to suppress. The court entered a judgment of conviction for felon in possession of a firearm, and this appeal followed.

## II.   ANALYSIS

### A.   *The Officer-Safety Doctrine*

Article I, section 9, protects citizens "against unreasonable search, or seizure." Warrantless searches and seizures are therefore presumptively unreasonable and must be justified by a recognized exception to the warrant requirement. *Bailey*, 307 Or App at 788.

One of those exceptions is the officer-safety exception, which recognizes that "legitimate officer safety concerns" may justify a warrantless search or seizure. *State v. Madden*, 363 Or 703, 712, 427 P3d 157 (2018). As first articulated in *State v. Bates*, the officer-safety doctrine permits an officer

> "to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

304 Or 519, 524, 747 P2d 991 (1987).

The officer-safety exception imposes a two-part burden on the state. *State v. Ramirez*, 305 Or App 195, 205, 468 P3d 1006 (2020). In a typical officer-safety case, the state must first establish that, based on "specific and articulable facts," an officer had a subjective reasonable suspicion that a defendant posed an immediate threat of serious physical injury. *Id.* Second, the state must prove that, "under the totality of the circumstances, (1) the officer's subjective safety concerns were objectively reasonable, and that (2) the

officer's response to the safety concerns was, itself, objectively reasonable." *Id.* The reasonableness of an officer's safety measures depends on "both the nature and extent of the perceived dangerousness as well as the degree of intrusion or restraint." *State v. Campbell*, 166 Or App 31, 36, 999 P2d 46 (2000).

The bulk of our officer-safety case law, including that which defendant relies on in his briefing, involves a defendant's challenge to a search or seizure of their person or an exploratory search for weapons within areas or possessions in their vicinity. *See, e.g.*, *State v. Keck*, 328 Or App 296, 307-08, 537 P3d 163 (2023) (addressing challenge to handcuffing of the defendant); *City of Portland v. Weigel*, 276 Or App 342, 345-46, 367 P3d 541 (2016) (same); *Bailey*, 307 Or App at 795 (addressing challenge to patdown search of the defendant); *State v. Smith*, 277 Or App 298, 310, 373 P3d 1089, *rev den*, 360 Or 401 (2016) (same); *State v. Ehly*, 317 Or 66, 83, 854 P2d 421 (1993) (addressing challenge to search of bag in the defendant's possession); *State v. Dyer*, 157 Or App 326, 331-33, 970 P2d 249 (1998) (addressing challenge to search of vehicle in the defendant's vicinity). In such cases, a defendant and their potential access to often undisclosed weapons is the safety threat that law enforcement's constitutional intrusions seek to mitigate. Therefore, the standard for determining whether an officer's intrusions are justified hinges upon whether they had a reasonable suspicion that *the defendant* posed an immediate threat of serious injury. That is why courts typically consider "evidence about [a] defendant's demeanor, conduct, or status" in evaluating the reasonableness of an officer's safety concerns. *Smith*, 277 Or App at 303.

That is not the situation here. Defendant neither challenges a search or seizure of his person, nor an exploratory search of his belongings for additional, unknown weapons. Instead, defendant challenges only the temporary seizure of an announced firearm from a disclosed location, a location that would require defendant to handle the loaded firearm, for the duration of the traffic stop.

That constellation of unique facts places this case somewhat outside the traditional contours of our officer-safety

case law, because here, the officer's taken safety measures relate only to the danger posed by the loaded firearm that defendant or the passenger would have had to handle in order to obtain documents, not the danger posed by defendant or the passenger based on their conduct. Further, based on the unique facts of this case, the appropriate inquiry is whether articulable and particularized facts *as to the loaded firearm*, under the circumstances specific to the stop, justified the officer's concerns and related actions. Regardless of a safety threat's origin, the touchstone of the officer-safety doctrine has always been reasonableness: the reasonableness of an officer's safety concerns and the reasonableness of their response.

Broadly speaking, the officer-safety doctrine authorizes law enforcement to take reasonable precautionary measures in response to confronted safety threats other than those directly posed by a defendant. *See Bates*, 304 Or at 523 (explaining that "police officers are entitled to take steps reasonably necessary to their safety"); *State v. Payne*, 310 Or App 672, 683, 487 P3d 413, *rev den*, 368 Or 514 (2021) (noting that we "have recognized *** circumstances where police may have a reasonable circumstance-based fear for their safety *even if there is no articulable fact specific to the defendant himself*" (emphasis added)); *see also State v. Foster*, 347 Or 1, 9, 217 P3d 168 (2009) ("[I]t is sufficient that the officers be able to point to specific and articulable facts *** that would reasonably create a fear for the safety of the officers or others from an imminent threat to them of serious physical injury."). That is because Article I, section 9, "circumscribes officer safety measures in the context of a stop *by principles of reasonableness*." *Campbell*, 166 Or App at 36 (emphasis added). Therefore, the relevant question is whether the "totality of the circumstances confronting the officer *** present[s] an objectively reasonable safety concern" that justifies the particular safety measures taken, "regardless of the fact that [the] defendant may not have been responsible for those circumstances." *Payne*, 310 Or App at 682. In that way, the various components of the officer-safety test dovetail because "the kind and magnitude of the threat that an officer reasonably perceives will largely

determine whether a given precaution taken in response to it was reasonable." *Madden*, 363 Or at 714.

Three cases help illustrate that point. First, in *State v. Riley*, the Supreme Court upheld an officer's seizure of a firearm from under the driver's seat where the defendant was outside but "still near" the vehicle, the defendant did not attempt to retrieve the firearm, and the officer testified that he did not fear injury by the firearm any "more than you normally would." 240 Or 521, 524-25, 402 P2d 741 (1965). The Supreme Court reasoned that the officer "should be permitted to take every reasonable precaution to safeguard his life" during an investigation which, under those circumstances, included seizure of the firearm.[1] *Id.* at 525. Second, in *Foster*, the Supreme Court upheld an officer's positioning of himself under and looking into a window of a residence because those actions were "within the range of reasonable precautions" that the officer could take in response to his reasonable suspicion that the residence's occupants posed an immediate threat of serious injury. 347 Or at 9-11. And third, in *Campbell*, we held that an officer went beyond the permissible scope of Article I, section 9, not by seizing a cigarette pack pursuant to a frisk of the defendant, but by opening that pack because the record "reveal[ed] no perception by the officer that *the contents of the cigarette pack* represented a potential danger." 166 Or App at 35-37 (emphasis added). The above cases demonstrate that, in the face of dangers that varied widely in source and degree, Oregon appellate courts have consistently assessed whether, under the totality of the circumstances, specific and articulable facts rendered reasonable an officer's safety concerns as to an identified threat and whether the officer's response to the threat was also reasonable.

---

[1] Defendant disputes the applicability of *Riley* because it predates the formal announcement of the officer-safety doctrine in *Bates*. We conclude that *Riley* represents a proper application of the officer-safety doctrine, which is supported by the fact that the Supreme Court expressly adopted *Riley*'s reasoning in *Bates*. 304 Or at 523-24. We therefore find *Riley* to serve as a helpful and appropriate comparison when assessing the reasonableness of the officer's safety concerns and resulting seizure of the firearm in this case. *See also Foster*, 347 Or at 12 (characterizing a separate pre-*Bates* officer-safety case as a "particular, and correct, application of the officer safety doctrine that [was] later articulated more thoroughly in *Bates*" and as "speak[ing] to the reasonableness of one particular type of officer safety response").

Applying those principles here, we focus our officer-safety analysis on the reasonableness of the perceived danger and the reasonableness of the officer's actions taken in relation to the identified safety threat: the firearm itself. We therefore evaluate (1) whether the officer had a subjectively reasonable belief that the firearm posed an immediate threat of serious injury based on specific, articulable facts, (2) whether that belief was also objectively reasonable under the totality of the circumstances, and (3) whether the officer reasonably responded to the threat presented by the firearm. In doing so, we remain cognizant of the well-established rule that the mere "presence of a weapon is a fact that may support a concern for officer safety," *State v. Wilson*, 283 Or App 823, 829, 390 P3d 1114, *rev den*, 361 Or 801 (2017) (internal quotation marks omitted), but "does not, *per se*, render officer-safety concerns objectively reasonable," *Bailey*, 307 Or App at 794.

Using that framework, we next consider defendant's arguments against the applicability of the officer-safety doctrine in this case.

B. *Application*

    1. *The officer had a subjectively reasonable belief that the firearm posed an immediate threat of serious injury.*

Defendant first argues that the state failed to prove that the officer had a subjectively reasonable suspicion that defendant posed an immediate threat because the officer "testified that nothing about defendant made him feel unsafe." But as we have already explained, the relevant question in this case is whether the officer had a subjective belief, based on articulable and particularized facts, that *the loaded firearm* posed an immediate threat of serious injury.

We conclude that the officer's testimony at the motion to suppress hearing and his conduct during the traffic stop demonstrate that the officer subjectively believed that the loaded firearm presented a threat of immediate bodily harm. First, the officer testified that, in general, knowing that a firearm is within reach of a car driver or passenger puts him on "high alert" during an investigation because he "know[s] that is a deadly weapon that can cause * * * serious physical injury or death" to himself and others, including a

civilian ride-along, the driver, and the passenger. Second, on cross-examination, he articulated the bases for his fears that were particularized to the firearm in this case:

"Q.  [O]ther than [defendant] stating there was a weapon in the vehicle, you didn't have any concerns for your safety, is that correct?

"[Officer].  My concern was *that the documents are where the firearm was located at*.

"Q.  Of course, but aside from the presence of a firearm, nothing [defendant] did caused you to feel unsafe.

"[Officer].  No.

"Q.  So sole reason for any safety concerns, in your opinion, was the presence of the weapon.

"[Officer].  *Where people would have to be digging for their documents*, yes—

"Q.  So within reach?

"[Officer].  Yes."

(Emphases added.) Third, the bodycam video substantiates the officer's articulated fears. It shows that after defendant disclosed the presence of the firearm in the console that he had "to open to grab the paperwork," the officer stated that, "because there's a firearm *in there*, I'm just going to seize it for the duration of the stop." (Emphasis added.) Fourth, the officer returned the firearm only after first unloading it and informing defendant and the passenger that, "I don't like to hand guns back loaded." That further supports the conclusion that, before unloading the firearm, the officer subjectively believed that it posed an immediate safety risk.

In contrast to *Campbell*, where the record did not support an officer's perception that the contents of a searched cigarette pack posed a potential danger, the above evidence demonstrates that the officer subjectively believed that the seized firearm, a deadly weapon, posed an immediate threat of serious physical injury to himself and others based on facts particular to the traffic stop. Those facts include the presence of an unsecured firearm, which could potentially be loaded, that was known to be located not only within reach of defendant and the passenger, but in a place such that it

would *necessarily be handled during the encounter*, and the presence of a civilian ride-along whose safety was implicated along with the safety of the officer, defendant, and the passenger. Thus, the state established that the officer subjectively perceived an immediate threat of serious injury with particularity.

2.   *The officer's belief was objectively reasonable.*

We now turn to the question of whether the officer's subjective belief with regard to the danger presented by the loaded firearm was objectively reasonable, under the totality of the circumstances as they "reasonably appeared at the time" that he decided to seize the firearm. *Madden*, 363 Or at 713. Defendant argues that because the state did not provide "any facts that supported a suspicion that defendant posed a threat to [the officer] or others present" and because the mere presence of a gun cannot support an objectively reasonable officer-safety concern, the officer's fears were necessarily unreasonable. But again, the focus of our analysis in this narrow context is whether the officer reasonably feared for his and others' safety based on facts specific and articulable to the firearm, not defendant. Particularized facts about defendant are among the circumstances that we may consider in evaluating the objective reasonableness of the officer's safety concerns as to the firearm, but the absence of threatening conduct on the part of defendant does not automatically render the officer's concerns underlying the temporary seizure of the firearm unreasonable. *Cf. Smith*, 277 Or App at 305 (noting that "where a defendant cooperates with police, in the absence of any threatening behavior by the defendant, generalized safety concerns (in other words, facts that are not particular to the defendant) are insufficient to justify an officer safety *search*" (emphasis added)).

In addition, we disagree with defendant's characterization that the sole basis of the officer's safety concerns boiled down to the mere presence of the firearm. Rather, we conclude that the totality of the circumstances particular to the firearm in this encounter reasonably supported the officer's subjective suspicion that the deadly weapon presented an immediate threat of serious bodily injury. The key facts include the known presence of a firearm, which could reasonably be

assumed to be loaded at the time that the officer decided to seize it, and which was in an easily accessible location alongside requested documentation and therefore necessitated handling during the stop. *Cf. Bates*, 304 Or at 526-27 (concluding that a search of a bag was unconstitutional because there was no evidence that the officers "thought the [bag] might be a weapon, or a case designed to hold a weapon"). The inevitable manipulation of a deadly weapon reasonably threatened the safety of all those present within shooting range, including defendant, the passenger, the officer, and the civilian ride-along even, as the trial court observed, "in the most cordial of circumstances," including by way of an accidental discharge.

In sum, under the particular circumstances confronting the officer, we conclude that the safety concerns about the firearm that was positioned in the same console as the requested documents were "reasonable * * * to a standard that society views as objectively reasonable." *State v. Whitlock*, 334 Or App 107, 110, 554 P3d 825 (2024) (brackets omitted). We emphasize that our conclusion here does not amount to a *per se* rule that the presence of a weapon alone is sufficient to legitimize officer-safety concerns.

3.  *The officer reasonably responded to the threat presented by the firearm.*

Finally, we conclude that the officer's response to the safety threat was objectively reasonable. We assess the reasonableness of an officer's actions "against two principles—that officer safety measures must be proportionate and that police officers must have latitude in deciding how to protect themselves." *Madden*, 363 Or at 719-20.

The officer's temporary seizure of the firearm for the duration of the traffic stop, which lasted approximately ten minutes, did not violate Article I, section 9, because, akin to the seizure of the gun from the car in *Riley*, it constituted a reasonable safety precaution that was proportionate in nature and scope to the danger posed by the loaded firearm. Before effectuating the seizure, the officer informed defendant and the passenger that he would "just * * * seize [the firearm] for the duration of the stop and * * * give it right back," and he made good on his word. His unloading of the firearm prior

to returning it was also reasonable, as that action mitigated the danger intrinsic to the handling of a loaded firearm, even under otherwise amicable circumstances. And although the officer did not confirm whether the firearm was loaded or not before seizing it, his actions reasonably responded to the safety risk before him. *See State v. Zumbrum*, 221 Or App 362, 366, 189 P3d 1235 (2008) (noting that appellate courts should not "uncharitably second-guess the split-second decisions of officers who often work under dangerous, potentially deadly circumstances" (internal quotation marks omitted)).

Indeed, we have upheld far greater constitutional intrusions upon cooperative defendants, including their handcuffing, where a deadly weapon was accessible but would not necessarily even be handled during the police-citizen encounter. *See, e.g.*, *Keck*, 238 Or App at 307 (concluding that safety concerns justified the handcuffing of a cooperative defendant during a traffic stop prior to a patdown search because the defendant "still had [a] knife on his person"); *Weigel*, 276 Or App at 342-46 (concluding that safety concerns permitted the handcuffing of an intoxicated but compliant defendant who had a gun in his front pocket, because that constituted "a reasonable precautionary measure * * * to guard against the possibility of the defendant accessing and discharging his weapon"). That further persuades us that the officer's temporary seizure of the firearm here was objectively reasonable.

In conclusion, the officer-safety exception is "a rule of necessity that enables officers to take reasonable measures to carry out lawful police activity." *State v. Kreis*, 365 Or 659, 676, 451 P3d 954 (2019). We narrowly hold that the officer's temporary seizure of a loaded firearm that would unavoidably be manipulated during the traffic stop squarely falls within that exception to the warrant requirement. Therefore, the trial court did not err in denying defendant's motion to suppress.[2]

Affirmed.

_____

[2] Defendant also argues on appeal that, to the extent that the trial court denied the motion to suppress based on the consent exception to the warrant requirement, that ruling constituted error because defendant and the passenger did not voluntarily consent to the seizure of the firearm. We need not address the consent issue because the state concedes that the court denied the motion primarily on officer-safety grounds and does not present arguments on consent in this appeal, and because we have already concluded that the officer-safety exception applies.